IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

DELALI NORVOR, aka DELANEY NORVOR,

*Plaintiff,*

v.

NATIONAL APARTMENT ASSOCIATION,
ANNE TOMKINSON,
AYIESHA BEVERLY, *Defendants.*

Civil Action No. 8:25-cv-03436-DKC

## PLAINTIFF'S OMNIBUS MOTION FOR SANCTIONS, COSTS, AND EVIDENTIARY ADVERSE INFERENCES PURSUANT TO 28 U.S.C. § 1927, FRCP 37(e), LOCAL RULE 104.7, AND THE COURT'S INHERENT POWERS

Plaintiff Delali Norvor, aka Delaney Norvor, proceeding *pro se*, respectfully moves this Court for an Order imposing monetary, procedural, and evidentiary sanctions against Defendants and Defense Counsel John Michael Remy / Jackson Lewis P.C.

Defendants and their counsel have engaged in a continuous, documented pattern of bad-faith litigation tactics, fraudulent suppression and spoliation of material facts, stonewalling off-docket communications, witness intimidation, and multiplying court proceedings vexatiously.

## I. PROCEDURAL AND FACTUAL GROUNDS FOR SANCTIONS

### A. Multiplied Proceedings, Manufactured Friction, and Bad-Faith Filings (28 U.S.C. § 1927)

1. **Compliance with Judicial Directive & In-Person Submission:** Following the Court's mid-June request for a formal motion to seal and the unredacted complaint, Plaintiff personally traveled to the Greenbelt Courthouse on June 22, 2026, to hand-deliver the unredacted filings directly to the Clerk of the Court, which were properly logged on the docket as ECF No. 51.

2. **Direct Off-Docket Transmission:** Ten days prior, on June 12, 2026, Plaintiff had already emailed the unredacted sealed materials— Plaintiff's Reply to ECF No. 41 and the ADR Statement—directly to Defense Counsel John M. Remy and his entire legal and

docketing team across five (5) distinct email addresses (john.remy@jacksonlewis.com, bernice.palys@jacksonlewis.com, DCRegionDocketing@JacksonLewis.com, Jordan.Agren@jacksonlewis.com, and margo.kutarba@jacksonlewis.com).

3. **Willful Ignorance of Filings Under Legal Name Since June 12:** Defendants failed to realize or deliberately ignored that Plaintiff has consistently submitted all legal filings—both electronically via ECF and in person—under her full legal name starting on June 12, 2026. Despite this clear record, Defendants feigned procedural confusion while remaining completely blind to the active docket.

4. **Reasonable Reliance During 24-Day Silence:** Following the June 12 transmission, Defendants maintained absolute silence for 24 days. Given this complete lack of response, Plaintiff reasonably waited to see if Defendants were in the active process of onboarding new legal counsel before taking further procedural steps.

5. **Failure of a Five-Member Legal Team to Communicate:** Despite operating as a coordinated BigLaw team of five attorneys and docketing staff, Defense Counsel failed to send a single email or make a routine inquiry to request the document they later claimed to desperately need.

6. **Manufactured "Hidden Document" Opposition:** Instead of engaging in basic professional correspondence, Defense Counsel chose to bill their organizational client to draft and file a six-page Opposition (ECF No. 54) on July 6, 2026, falsely accusing Plaintiff of "hiding" the operative pleading to manufacture grounds for tolling their deadline to Answer.

7. **Disregard of Physical Courthouse Stamp:** Defense Counsel's filing demonstrated a total failure to review the active docket, willfully ignoring the physical evidence of filing on ECF No. 51, which plainly bears the clerk's stamp: **"USDC - GREENBELT '26 JUN 22 PM 3:48"**.

8. **Perjury-Backed "Jane Doe" Certificate:** After repeatedly referencing the Court's June 11 Order regarding legal names, Defense Counsel formally certified **under penalty of perjury** on Page 6 of their July 6 Opposition that they served the document upon a non-existent pseudonym (**"Jane Doe"**) at Plaintiff's private residence—proving a total collapse of quality control and bad-faith execution.

9. **Intimidating Christmas Eve Delivery Stunt:** Defense Counsel orchestrated an intimidating holiday-eve tactic by dispatching an unnecessary overnight courier delivery containing a hard-copy set of their Reply to Plaintiff's Rule 12(b)(6) Plausibility Addendum directly to Plaintiff's private residence on Christmas Eve. Defense Counsel executed this physical mailing despite the fact that Plaintiff had already electronically received and fully responded to the filing on ECF just two (2) hours after its submission

via a Motion for Sur-Reply and Proposed Sur-Reply. This redundant physical delivery was strategically timed to arrive on Christmas Eve solely to harass, intimidate, and inflict psychological distress on a *pro se* litigant during the holidays.

**B. Complete Administrative Blackouts, Historical Stonewalling, and Severe Physical/Medical/Financial Harm (D. Md. Local Rule 104.7 & Appendix C)**

1. **Off-Docket Stonewalling:** Defendants maintained a 14-day total administrative blackout off-docket after receiving unredacted pleadings on July 6, 2026, refusing to reply, confirm receipt, or engage in basic civil communication required by Local Rule 104.7 and Discovery Guideline 1.d.

2. **Historical Evasion Pattern:** This 14-day blackout compounds a historical 195-day period of absolute non-communication, establishing a bad-faith pattern of procedural evasion solely designed to stall answering the operative complaint.

3. **Pre-Litigation Stonewalling of Retained Counsel:** Long before formal litigation commenced, Plaintiff hired three (3) separate attorneys to negotiate a mutually beneficial resolution that would have preserved NAA's corporate reputation and protected the individual Defendants from public docket exposure. Outside counsel John Remy and Mary Mullen systematically stonewalled each of Plaintiff's retained counsel, taking weeks or months to respond to basic correspondence and actively stalling good-faith resolution discussions.

4. **Arrogant Pre-Litigation Position & Dismissal of EEOC RTS:** During these pre-litigation exchanges, John Remy arrogantly declared that Plaintiff's claims were worth merely "nuisance value." Even after Plaintiff received her formal Right to Sue (RTS) notice from the EEOC validating her claims, Mr. Remy continued to dismiss all resolution attempts, explicitly asserting that settlement discussions were a "waste of time for both parties."

5. **Direct Interference & Stonewalling Regarding Bloomberg Keynote Presentation:** In the spring of 2025, Plaintiff was booked as the opening keynote speaker for Bloomberg's inaugural Disability in Tech conference. Because Plaintiff utilizes text-to-speech technology due to her selective mutism, her presentations must be recorded in advance. Plaintiff's attorney reached out directly to John Remy to request standard permission from NAA for Plaintiff to reference her work with the association during her address. Defense Counsel completely ignored this time-sensitive request and never responded. As a direct result of Mr. Remy's calculated silence and refusal to communicate, Plaintiff was unable to complete her pre-recorded opening address in time and was demoted from the prestigious opening keynote spot to a closing presentation.

6. **Retaliatory Economic Warfare (Denial of Unemployment, Severance, and Bonuses):** Defendants deliberately executed a campaign of bad-faith economic suppression by stripping Plaintiff of earned severance, contractually earned bonus

structures, and actively opposing her state unemployment benefits before administrative bodies (including the Maryland Department of Labor and Virginia Employment Commission). This intentional asset stripping was engineered specifically to harass, intimidate, and coerce Plaintiff into severe financial and medical hardship to discourage her from exercising her legal rights and pursuing federal civil rights remedies.

7. **Infliction of Severe Medical Harm and Physical Decline:** As a direct and intended consequence of this bad-faith economic warfare, tactical stonewalling, and unprovoked obstruction—orchestrated by Defendant Anne Tomkinson, insulated by General Counsel Ayiesha Beverly, and executed on the ground by outside counsel John Remy—Plaintiff, an individual navigating multiple disabilities, suffered severe physical health decline, acute medical complications, and dramatic weight loss under the extreme stress of their sudden, process-less termination and ongoing procedural harassment.

8. **Pattern of Engineered Obstruction:** This history of stonewalling—ranging from ignoring time-sensitive professional requests to ghosting court-ordered transmissions and deliberately inflicting medical and financial stress—proves that Defendants' off-docket blackouts are not isolated administrative oversights, but part of a continuous, bad-faith strategy designed to inflict professional, financial, and physical harm while avoiding substantive legal accountability.

**C. FRCP Rule 37(e) Spoliation, Fact Suppression, Witness Intimidation, and Retaliatory Environment**

1. **Post-Termination Evidence Tampering:** Defendant Anne Tomkinson actively engaged in evidence tampering by leveraging high-pressure SMS text messages post-termination targeting an employee with ADHD to force the deletion of an altered 90-day performance review file.

2. **Pre-Litigation Fraudulent Concealment from Legal Counsel:** Pre-litigation records spanning February 2025 to October 2025 establish that Defendant Tomkinson routinely omitted critical material facts from General Counsel Beverly and outside counsel John Remy to feed them a selective, distorted narrative masking personal animus.

3. **Contradictory Government Submissions:** Defendants authorized an electronic Equifax SIDES submission certifying **"no prior incidents"** on Plaintiff's record to state administrative agencies and declined to participate in a fact finding hearing. They then turned around and presented a fabricated "gross misconduct" and policy-compliance defense to this Court—trapping their defense table in an irreconcilable administrative contradiction.

4. **Omission of Mandated Consultative Protocols:** Defendants omitted and disregarded their own internal handbook requirements and progressive correction policies before executing a process-less termination, attempting to conceal that internal standards were

bypassed entirely.

5. **Witness Fear of Retaliation and General Counsel Beverly's Hostile Conduct:** Key witnesses and former staff feared severe professional retaliation based on General Counsel Ayiesha Beverly's documented history of retaliatory behavior, including making hostile, retaliatory remarks (e.g., stating *"you filed an EEOC complaint, etc."*) while personally escorting a terminated Black employee to her vehicle.

6. **Justification for Pseudonym and Sealing Protections:** This pervasive atmosphere of intimidation and retaliation—orchestrated by Defendant Anne Tomkinson and enforced by Defendant Beverly—directly prompted Plaintiff to initially file under a pseudonym and seek sealing protections to safeguard vulnerable current and former employees from retaliatory targeting.

7. **Testimony on Pre-Tomkinson Corporate Environment:** A terminated Black employee who served NAA with loyalty and distinction for nearly a decade confirmed that she never experienced operational problems or discriminatory treatment at the association until the hiring and arrival of Defendant Anne Tomkinson, establishing that the systemic discriminatory and retaliatory pattern directly originated with Tomkinson's tenure.

## II. LEGAL STANDARDS AND APPLICABLE SANCTION AUTHORITY

- **28 U.S.C. § 1927:** Authorizes the Court to compel any attorney who *"multiplies the proceedings in any case unreasonably and vexatiously"* to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. Defense Counsel's decision to bill for ECF No. 54 over documents sitting in five of their email inboxes directly triggers this statutory threshold.

- **The Court's Inherent Powers (*Chambers v. NASCO, Inc.*):** Empowers the Court to police bad-faith litigation conduct, fraudulent representations, and oppressive procedural tactics by striking pleadings, issuing adverse inferences, or awarding costs.

- **FRCP Rule 37(e) & Common Law Spoliation:** Mandates elevated sanctions—including adverse inference instructions or preclusion of defenses—when a party fails to preserve evidence, alters records, pressures witnesses to delete files, or suppresses material facts in bad faith.

- **D. Md. Local Rule 104.7 & Discovery Guideline 1.d:** Mandates that counsel maintain open, civil communication and reasonably engage off-docket rather than filing frivolous procedural motions or ghosting *pro se* litigants.

## III. REQUESTED RELIEF

Plaintiff respectfully requests that this Court enter an Order granting the following relief:

1. **Monetary Sanctions under 28 U.S.C. § 1927:** Ordering Jackson Lewis P.C. and Defense Counsel personally to pay monetary costs to the Court for vexatiously multiplying proceedings through ECF No. 54.

2. **Mandatory Adverse Inference Instruction:** Finding as a matter of law (or issuing a mandatory jury instruction) that the suppressed, altered, and omitted performance records, internal communications, and Equifax state agency submissions establish Defendants' discriminatory and retaliatory animus.

3. **Striking of Affirmative Defenses:** Striking Defendants' affirmative defenses relying on "gross misconduct," progressive discipline, or policy compliance due to direct contradiction with their certified state agency filings.

4. **Preclusion of Procedural Delay:** Denying Defendants' request to toll their deadline to Answer and ordering Defendants to file their Answer to the operative Amended Complaint (ECF No. 45 / ECF No. 51) within seven (7) days.

5. **Such Other Relief:** Granting any further relief the Court deems just and proper to restore integrity to these proceedings.

Respectfully submitted,

/s/

Delali Norvor, aka Delaney Norvor
*Plaintiff, Pro Se*
Date: July 21, 2026
10516 John Glenn St
Lanham, MD 20706
Contact: delalinorvor@icloud.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of July, 2026, I caused a true and correct copy of the foregoing Plaintiff's Addendum to Reply (ECF 55) to be filed with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all counsel of record.

Respectfully submitted,

/s/

Delali Norvor, aka Delaney Norvor
*Plaintiff, Pro Se*