IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DELALI NORVOR a/k/a Delaney Norvor

v. : Civil Action No. DKC 25-3436

NATIONAL APARTMENT ASSOCIATION, et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case are five motions: the motion for a protective order filed by Plaintiff Delali Norvor ("Plaintiff"), (ECF No. 18); the motion to dismiss for failure to state a claim filed by Defendants National Apartment Association, Anne Tomkinson, and Ayiesha Beverly (collectively, "Defendants"), (ECF No. 31); the motion for leave to file surreply filed by Plaintiff, (ECF No. 38); the motion to file unredacted amended complaint under seal filed by Plaintiff, (ECF No. 50); and the omnibus motion for sanctions, costs, and "evidentiary adverse inferences" filed by Plaintiff, (ECF No. 57). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, all five motions will be denied.

## I. Background

Ms. Norvor is "a Black physically disabled woman and former Director of Product Management at the National Apartment

Association ('NAA')." (ECF No. 48, at 1).[1] She started working at NAA in 2024, where her "performance and leadership were praised internally and externally." (*Id.* at 1–2). She promoted several team members, "advocated for equitable hiring practices," and "strengthen[ed] department capacity and collaboration." (*Id.* at 2). While Ms. Norvor's work was praised, she states that Defendants "engaged in a pattern of discriminatory and retaliatory treatment following [her] accommodation requests and advocacy for inclusion." (*Id.*).

NAA terminated multiple Black women, including Ms. Norvor and at least two others, "within the same twelve-month period" under the direction of Ms. Tomkinson, (*id.*), the Senior Vice President of Human Resources, (*id.* at 1). Three of the fired Black employees were subsequently replaced by White women; Ms. Norvor's replacement allegedly began to earn considerably more than Ms. Norvor had been paid. (*Id.* at 3). In addition to the terminations, "[m]ultiple Black women at NAA reported that Tomkinson verbally insulted and demeaned them." (*Id.* at 4).

---

[1] This recitation comes from the signed amended complaint filed at ECF No. 48 (and not the unsigned amended complaint filed at ECF No. 45). Ms. Norvor restarts the paragraph numbering at 1 at the beginning of each new section in the amended complaint. To avoid confusion, then, the court cites to the page number on which each factual allegation appears, rather than the paragraph number. Ms. Norvor is advised that any future pleadings should contain continuously numbered paragraphs, just as her original complaint did.

Describing the circumstances of her firing, Ms. Norvor states that she was "terminated without any pre-termination fact-finding, interview, or due process after a fully repaid corporate-card transaction was weaponized as pretext." (*Id.* at 3). The transaction took place when she "accidentally used her corporate [American Express ('AmEx') credit card] instead of her personal AmEx to make an emergency purchase while helping" an individual with a family emergency. (*Id.* at 5). She submitted an expense report and an approved payroll deduction to pay back the charges. (*Id.*). When Ms. Tomkinson learned of the charges, after Ms. Norvor had submitted the expense report, she "immediately scheduled a 15-minute termination call instead of a meeting or investigation." (*Id.* at 4).

Ms. Norvor alleges that the mistreatment continued after her firing. Defendants "denied unemployment benefits" and withheld a bonus from her. (*Id.* at 3). Plaintiff also had trouble contacting former coworkers after she was terminated. She reached out to the Director of Accounting to "ask whether other employees had used corporate cards for personal expenses and repaid them," but the Director of Accounting blocked her. (*Id.* at 4). Former direct and indirect reports did not respond when Plaintiff asked for references, which she believes is "consistent with direction from

Tomkinson or Beverly[, NAA General Counsel,] to avoid contact." (*Id.*).

Ms. Norvor received an Equal Employment Opportunity Commission ("EEOC") right-to-sue letter in August 2025, after initially filing her complaint with the Virginia Office for Civil Rights. (*Id.* at 3). She filed a complaint in this court on October 17, 2025, (ECF No. 1), as well as a motion to proceed under a pseudonym and seal her identifying information, (ECF No. 2). She proceeded to file numerous exhibits on the docket, for which she filed several motions to seal, (ECF Nos. 13; 22). On November 24, Plaintiff filed a motion for a protective order "prohibiting any contact with non-party witnesses," (ECF No. 18), which Defendants did not oppose. On December 10, Defendants filed a motion to dismiss. (ECF No. 31). In what would become a pattern, Plaintiff responded the same day, (ECF No. 34), and Defendants replied on December 23, (ECF No. 37). On the same day, Plaintiff moved for leave to file surreply. (ECF No. 38). Defendants did not oppose Plaintiff's motion.

On June 11, 2026, the court denied Plaintiff's motion to proceed under a pseudonym and seal her identifying information, granted her motion to seal certain medical records, and granted in part and denied in part her motion to seal the other exhibits she had filed. (ECF No. 41). The motions for a protective order, to

dismiss, and for leave to file surreply remained pending. Plaintiff was given seven days to withdraw her complaint, if she wished, in light of the court's denial of her request to proceed under a pseudonym. The following day, she notified the court that she would proceed under her real name. (ECF No. 42).

On June 16, Plaintiff filed an amended complaint with new counts and considerable redactions. (ECF No. 45). She filed a signed version on June 17. (ECF No. 48). It asserts a variety of claims under state and federal law, including discrimination on the basis of race and disability. On June 18, the court issued an order directing Plaintiff "either to file a public, unredacted version of the amended complaint, or, if Plaintiff wishes to proceed on the filed redacted amended complaint, to file a motion to seal that includes proposed reasons supported by specific factual representations to justify the sealing and an explanation why alternatives to sealing would not provide sufficient protection." (ECF No. 49, at 2). Plaintiff filed a motion to seal and the accompanying unredacted amended complaint under seal on June 22. (ECF Nos. 50; 51). Defendants responded to Plaintiff's motion to seal on July 6, (ECF No. 54), and Plaintiff then replied the same day, (ECF No. 55), which she followed up with an "addendum" on July 20, (ECF No. 56). The addendum appears to assert additional claims not previously raised.

Finally, on July 21, Plaintiff filed an omnibus motion for sanctions, costs, and "evidentiary adverse inferences." (ECF No. 57). She also filed two "evidentiary notices" on July 27 and 29. (ECF Nos. 58; 59). Defendants responded to Plaintiff's motion for sanctions on August 4, (ECF No. 60), and Plaintiff replied the same day, (ECF No. 61). Defendants then responded to Plaintiff's "evidentiary notices" on August 10, and Plaintiff replied the same day, (ECF No. 63).

Plaintiff's prolific filing has cluttered the docket to an unfortunate extent. The following motions remain pending to resolve: the motion for protective order, (ECF No. 18), the motion to dismiss, (ECF No. 31), the motion for leave to file surreply, (ECF No. 38), the motion to seal, (ECF No. 50), and the motion for sanctions, (ECF No. 57).

## II. Motion for Protective Order

Long prior to effecting service on all Defendants, Plaintiff moved under Fed.R.Civ.P. 26(c) for a protective order barring Defendants and their counsel "from contacting any non-party witness outside formal discovery procedures." (ECF No. 18, at 1). Her primary concern appeared to be that Defendants and their counsel would intimidate non-party witnesses and retaliate against them. (*Id.* at 2-3). The motion is entirely conclusory and provides no support.

Rule 26(c) permits "[a] party or any person from whom discovery is sought [to] move for a protective order . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," provided that the motion includes a certification that the movant first attempted to resolve the matter in good faith out of court, and that there is good cause to issue the order.

Formal discovery has not begun because the case is not at issue. Plaintiff has provided no evidence that any feared action is occurring or likely to occur. Accordingly, Plaintiff's motion for a protective order is denied without prejudice to renewal at the appropriate time and in the appropriate form.

**III. Motions to Dismiss and for Leave to File Surreply**

Defendants have a pending motion to dismiss, and Plaintiff has moved for leave to file surreply in relation to Defendants' motion. The court explained in its June 18 Order that "[i]f Plaintiff files an unredacted amended complaint," then "the original motion to dismiss will be moot." (ECF No. 49, at 2). Because Plaintiff proceeded to file an unredacted amended complaint along with her motion to seal, (ECF Nos. 50; 51), Defendants' motion to dismiss is moot. And because the motion to dismiss is moot, Plaintiff's motion for leave to file surreply is necessarily moot, too. Both motions will be denied.

The court's additional guidance still applies: "Defendants will need to file a new response to the amended complaint. They may, if they wish, incorporate the original motion to dismiss into a new motion rather than repeat the arguments that remain applicable to the amended complaint, and then only address the new matters added in the amended complaint." (ECF No. 49, at 2-3).

**IV. Motion to Seal**

Plaintiff moves to redact numerous allegations in the amended complaint, primarily those (1) naming individuals, (2) describing the medical conditions of Plaintiff and others, and (3) describing the family emergency that sparked the corporate credit card use. Defendants oppose the redactions.

When ruling on a motion to seal, the court balances the public's general interest in transparent judicial proceedings against competing interests specific to the case. *See Doe v. Pub. Citizen*, 749 F.3d 246, 265-66 (4th Cir. 2014); *In re Knight Publ'g Co.*, 743 F.2d 231, 234 (4th Cir. 1984).

Plaintiff seeks, by redacting names, to protect the identities of individuals she labels witnesses (including, curiously, defense counsel) due to fear of witness intimidation and retaliation. Her motion is self-defeating because it publicly names the individuals whose names she otherwise seeks to redact. She also named those individuals in her original complaint filed

ten months ago, which remains on the public docket. Because Ms. Norvor has already made these names public knowledge, and identified them to Defendants, redaction now would accomplish little. *See Rock v. McHugh*, 819 F.Supp.2d 456, 476 (D.Md. 2011) (denying motion to seal where the information sought to be sealed had been on the public docket for more than a year).

Next are the medical conditions of Plaintiff and another individual. Plaintiff simply states that her medical conditions are "highly sensitive" and warrant redaction, and she does not address her redaction of the other individual's medical condition. She will be unable to redact this information for three reasons. First, her motion is again self-defeating, because it publicly describes her medical conditions and that of the other individual. Second, she has previously represented that she has a "public profile as a Black disabled executive." (ECF No. 2, at 1). One of the exhibits she filed is a magazine article describing one of her medical conditions and her experience as a "disabled boss." (ECF No. 23-21, at 2). Third, Plaintiff has put her medical conditions at issue by asserting claims under the Americans with Disabilities Act but has not described them in detail. *See Rock*, 819 F.Supp.2d at 476 (denying the plaintiff's motion to seal references to his medical condition because he had put his medical

condition at issue and the relevant papers did not "delve into the details of [his] condition to a degree that warrants sealing").

Finally, Plaintiff wishes to redact the information regarding the family emergency that led to her use of the corporate credit card. But again, her motion publicly explains the very family emergency she seeks to redact, and her account of it in the original complaint remains on the public docket.

Plaintiff's motion to seal will be denied, and the clerk will be directed to file the unredacted amended complaint on the public docket.

## V. Motion for Sanctions

Plaintiff's last motion[2] is for sanctions, costs, and "evidentiary adverse inferences" pursuant to 28 U.S.C. § 1927, Fed.R.Civ.P. 37(e), Local Rule 104.7, and the court's inherent powers. She premises her motion on what she believes to be defense counsel's poor communication with her and obstructive behavior by Defendants. None of the authorities she cites support her

[2] To the extent Plaintiff's "evidentiary notices" are intended to be motions, (ECF Nos. 58; 59), they are denied as premature efforts to litigate the merits. Defendants request that the court require Plaintiff to obtain leave before filing any future notices. (ECF No. 62, at 1). While the court will not issue a formal order to that effect, Plaintiff is advised that piecemeal filing is improper. When appropriate, she should file motions in compliance with Fed.R.Civ.P. 7, a single response in opposition to any motion filed by Defendants, and a single reply in support of any motion she files.

requested relief. Nor has she presented anything close to a basis for any relief.

28 U.S.C. § 1927 authorizes the entry of sanctions against "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously." The only "multiplication" of proceedings Plaintiff points to is Defendants' opposition to her motion to seal. (ECF No. 57, at 2). Not only does a single filing not even approach the high bar for § 1927 sanctions, but also the filing was entirely proper. In fact, the court agreed with the opposition. There is no basis for § 1927 sanctions.

Fed.R.Civ.P. 37(e) deals with sanctions for failure to preserve electronically stored information ("ESI"). A movant under Rule 37(e) must satisfy four criteria:

> (1) the party was under a duty to preserve the ESI at issue; (2) the ESI at issue was not preserved; (3) the loss of the ESI was due to the party's failure to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery. Fed.R.Civ.P. 37(e); *see Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 2483800, at *4 (E.D.N.C. June 7, 2017) (citations omitted). If these criteria are met, Rule 37(e) offers two alternative paths: The first avenue, Rule 37(e)(1), requires a court to make a finding of prejudice before sanctions may be warranted. The second avenue, Rule 37(e)(2), requires a court to make a finding that a party acted with the *intent* to deprive the opposing party of the ESI prior to imposing sanctions. *See Mod. Remodeling v. Tripod Holdings, LLC*, No. CCB-19-1397, 2021 WL 3852323, at *10 (D.Md.

> Aug. 27, 2021); *In re: Ethicon, Inc.*, No. 2:12-CV-00497, 2016 WL 5869448, at *3 (S.D.W.Va. Oct. 6, 2016). . . .
>
> The burden of proof is on the party seeking sanctions, and the standard of proof in the Fourth Circuit appears to be 'clear and convincing' evidence where, as here, relatively harsh sanctions are sought. *Id.*

*Gov't Emps. Health Ass'n v. Actelion Pharms. Ltd.*, 343 F.R.D. 474, 481–82 (D.Md. 2023). Plaintiff cites just one instance of ESI that she believes was not preserved: another former employee's supposedly altered 90-day performance review, which Ms. Tomkinson allegedly instructed that former employee to delete. (ECF No. 57, at 4; *see also* ECF No. 48, at 4). But Plaintiff fails to show how this single example satisfies *any* of the above requirements of Rule 37(e). She has not met her high burden.

Next, Local Rule 104.7 requires parties to confer in good faith regarding a discovery dispute and make a reasonable effort to resolve it before either party files a discovery motion. Plaintiff gestures at "stonewalling" by Defendants, much of which occurred before she even filed suit. (ECF No. 57, at 3–4). As already noted, this case is not in the discovery stage. Accordingly, Local Rule 104.7 is inapplicable.

Finally, there is no basis for the court to wield its inherent authority to impose sanctions.

Plaintiff's motion for sanctions will be denied.

## VI. Conclusion

For the foregoing reasons, Plaintiff's motions for a protective order, for leave to file surreply, to file unredacted amended complaint under seal, and for sanctions will be denied. Defendants' motion to dismiss will be denied as moot. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge